Nott, J.
The grounds on which it is attempted to support this motion; are, 1st, That when the City Council was established there was an act of Assembly of force in this state which imposed a fine of ¿050 sterling on any person who should retail spirits without license, which penalty could not be recovered, but through the medium of a grand jury; and, as the city has no grand jury, it could not take cognizance of the case. 2nd. That a corporation aggregate cannot sue as a common informer.
With regard to these two grounds, I will only observe that this penalty may he recovered either by indictment or action of debt; and, admitting it to he an “ established principle of law,” as the suggestion *734 states? that a corporation aggregate cannot sue as a common informer? yet it is a principle of law as well established? that a corporation aggregate may sue and he sued in an action of debt? as well, as an individual; the motion? therefore? cannot succeed on either of these grounds.
3rd, It is contended that the act of Assembly passed December? 1805? authorising the City Council to ascertain and define the boundaries of the wards of the city? did not authorise them tq lay off the wards in ,a different manner from what they were before; and, therefore? the election of wardens according to the present division of the city? and all the proceedings of the Council since were null and void.
By the act of Assembly passed the 13th day of August? 1783? the city of Charleston was divided into thirteen wards? which were designated by metes and bounds; but not having been expressed with sufficient précision, the City Council were author-ised by the act of 1805? to ascertain and define? either by commissioners or in any other manner they might think expedient? the respective boundaries of the said wards. The words “ ascertain and define” did not imply a power to alter or make new, but to make certain? some preexisting fact? which was before doubtful. We.must look to the act then and see whether? from the contents? there is any thing from whence we can infer that the Legislature intends to give them a more extensive signification.
*735 The act is entitled, ({ An act to ascertain and de-a fine;” in the preamble the words are, ct to ascertain and adiust;” in the enacting clause, “ to ascertain and define;” the same words are then three times repeated, except that in the preamble, the word <c adjust” is introduced instead of “ define.”
The advocates for this power in the City Council, derive no aid from that substitute; theword i( adjust” Cannot he construed to extend the meaning of the word <e define; on the contrary, it would seem rather to restrain than to extend its meaning. Sup-pQse for instance, commissioners should be appointed to ascertain and define, or adjust, the respective boundaries of Great Britian, Spain and the United States; would it be pretended that they were authorised to make new and arbitrary lines ? Would it not rather be understood to mean that they should ascertain-by actual survey, and define by distinct and visible marks, lines already settled by treaty, but existing only on paper. The case before us is exactly parallel. The Legislature has settled the limits of the wards ; but it is referred to the City Council to ascertain and define them. If the city had never been laid off into wards; I should have supposed that these words might have had the meaning now contended for, but under existing circumstances, I ■think the City Council have exceeded their powers.
Another ground taken is, that the constitution requires the judges of the superior and inferior courts to be appointed by the Legislature, and commission. *736 ed by the governor; whereas the judge of the City Court is elected by the City Council, and commis* si°ne^ by the intendant, and, therefore, his eom-misssion is void.
■ The words of the constitution which have relation to this subject, are, i( The judicial power shall be a vested in such superior and inferior courts of law {i and equity, as the Legislature shall from time to i( time direct and establish ; the judges of each shall a hold their commissions during good behaviour. :i Art. 3, sec. 1st. The judges of the superior court (e shall be elected by joint ballot of both houses in ie the House of Representatives. Art. 4. sec, 1st. ■c< All commisssions shall be in the name and by the e< authority of the state of South-Carolina, and be u sealed with the seal of the state, and signed by the governor. Section the third.
These clauses of the constitution obviously relate to state officers!, and not to officers of corporations. How far that part of the act which confers on the’ City Court the power to try causes arising under the laws of the state, and not the by-laws of the City Council, may be considered constitutional, is a question which need not now be considered. I will, however, observe that, in my mind, it is a question of no little importance, and requires the early attention of those who are interested in having it correctly decided. But I have no doubt that the Legislature has the power to establish corporations, and that they may confer on them the power of ap~ *737 pointing judges, with full power to try all cases arising under their own by-laws. This being a case of that discription, was unquestionably cognizable by the city court, if the by-law itself is constitu ' i tlOnai.
This brings me to the fourth and last ground, to wit; that this is a public offence created by an act of the Legislature, for the commission of which a fine of fifty pounds is imposed; that it is, therefore, not cognizable by the City Council, and that they could not, by legislating upon it, bring it within the jurisdiction of the city court.
By the act of 1784, (Grimke, 341.) it is enacted, that if any person or persons within this state not duly licensed in manner above directed, shall presume to retail any wine, brandy, rum, &c. or any Spirituous liquor, or strong drink whatever, he, she or they shall forfeit the sum of fifty pounds sterling, to be recovered in any court of record in this state ; one half to be paid to the informer, &c. The City Council have passed a by-law imposing a penalty of one hundred dollars for the same offence. This bylaw must either virtually repeal the act of the Legislature, or it must impose an accumulative fine of one hundred dollars on the penalty provided by the act of 1784. The first is too absurd to obtain any advocate, and the last, too extravagant to admit of argument, and has been abandoned by the counsel.
The whole case then at last resolves itself into a *738 question, whether the penal clause of this act embraces the city of Charleston. The act contains three clauses only. By the first, it is enacted that the price of licences in Charleston shall he ten pounds per annum, and that they shall be granted by the City Council. By the second, it is enacted that the price shall be three pounds in the other parts of the state, and the licence be granted by the magistrates; and the third imposed, a penalty of fifty pounds on “ any person or persons within the state, who shall retail spirituous liquors without being duly licensed in the manner above directed,” that is to say without being licensed by the City Council of Charleston, and by two magistrates in the other parts of the state.
The words of this act are so plain, that it is impossible to mistake them. There is no pretence for saying the penalty does not extend to Charleston; it extends to every person in the state. The most refined ingenuity cannot raise a doubt upon the subject. The act of 1796, 2 Faust. 101. authorises the City Council to increase the price of licenses at their discretion ; but it gives them no discretion as to the penalty. The act of 1801, 2 Faust, 398. reduces the penalty to one hundred dollars; and although this may virtually repeal the act of 1784, so far as regards the penalty, yet it must be recovered in the same way as before. No new or additional power is granted to the City Council, and the proviso which, it is contended, excepts the city of Charleston, merely reserves the powers at present *739 •granted by law, and now exercised by the corporation of Charleston. It does not legalize any act of the City Council, not before authorised by law. •> '
It is also contended, that the power to grant li-cences to retail liquors, implies a power to impose a penalty on those who shall retail without; that when they are authorised to do an act, they must necessarily possess the means to carry that act into effect. This might be correct reasoning, if the Legislature had not imposed a penalty and furnished means, much more efficient than the City Council possessed, of enforcing it. I am aware of the necessity of giving extensive powers to these city corporations. There are many regulations of a local nature in a large populous town, which are not of sufficient importance to the state to attract the attention of the Legislature, but which are nevertheless very important to the inhabitants of the town. All these fall within the peculiar province of the City Council; but they must not set about regulating the affairs of the state. It is an usurpation of the pow< rs of the Legislature, in which they are not to be indulged. The prohibition, therefore, ought to be granted.
Brevard, J. concurred.
Bay, J. dissented.